## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1)    EL NACIONAL DE OKLAHOMA, INC., | |
| Plaintiff, | |
| v. | Case No. CIV-14-728-D |
| 1)    TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF TOM IRMITER AND BRIEF IN SUPPORT

COMES NOW the Defendant, Travelers Casualty Insurance Company of America ("Travelers"), and moves this Court to exclude the testimony and opinions of Plaintiff's witness, Tom Irmiter, from evidence in this case and preclude him from testifying at trial of this matter. In support of this motion, Travelers shows this Court as follows:

## I. INTRODUCTION

This litigation involves a coverage dispute between Plaintiff and its commercial insurance carrier, Travelers. On or about June 10, 2013, Plaintiff notified Travelers of an insurance claim for damage to its commercial building resulting from a hail storm on May 31, 2013. Travelers' adjusters inspected the property on June 13 and 16, 2013, estimated the actual value of damages in the amount of $1,574.29 for minor hail damage, and on June 16, 2013 made payment of $574.29 to Plaintiff after deducting Plaintiff's $1,000 deductible. Travelers then retained the services of a licensed professional engineer to opine on the cause

and extent of damage.  The engineer inspected the property on June 21, 2013 and issued his report on July 8, 2013.  The engineer did not find hail damage to the roof covering, and believed that any interior water leaks were the result of other causes such as poor maintenance and inadequate drainage on the roof surface.  Based on the policy's exclusion for water damage not resulting from a storm related opening, and the engineer's finding that there was insufficient hail damage to the roof justifying replacement, Travelers denied further obligation under the policy based on the engineer's report.

Plaintiff filed this lawsuit on May 28, 2014 alleging Travelers' breach of the insurance contract and breach of the common law duty of good faith and fair dealing ("bad faith").  A central issue in this case is whether the May 31, 2013 storm caused direct physical damage to the roof and HVAC systems necessitating replacement.  Nearly a year after filing this suit, Plaintiff retained the services of Tom Irmiter to opine on the cause and nature of damages resulting from the May 31, 2013 storm.  Mr. Irmiter first inspected the property on June 8, 2015, over two years after the date of loss, and after at least two intervening hail storms hit the building.

While Mr. Irmiter may be qualified by experience and training to opine on the cause and extent of storm damage generally, he has failed to employ a reliable methodology in this case and his opinions should be excluded as unreliable under *Daubert*.

## II.    FACTS

1.    The hail storm giving rise to this claim occurred on May 31, 2013.  (*First Amended Complaint*, Exhibit "1", ¶¶ 6-7).

2

2.      Travelers' adjuster inspected the property on June 13 and June 16, 2013. (*Deposition of Eric Cottner*, Exhibit "2", p. 44, ll. 21-24; p. 62, ll. 10-16).

3.      Mr. Cottner's inspection did not find sufficient hail damage to the roof of the building to justify replacement of the roof under the policy.  (Ex. "2", p. 62. l. 10 through p. 66, l. 23).

4.      Travelers retained the services of a professional engineer who inspected the property on June 21, 2013 and issued a report on July 8, 2013.  (Ex. "2", p. 67, l. 14 through p. 68, l. 11; p. 71, ll. 17-21).

5.      The engineer did not find hail damage to the roof field justifying replacement of the roof, nor interior damage resulting from a storm related opening.  (*Vertex Report, dated July 8, 2013*, Exhibit "3", pp. 4, 6.)

> Based on our observations, with a reasonable degree of certainty, it is our opinion there is no hail damage to the roof of the building resulting from the May 31, 2013 storm.  There is no evidence of hail impact marks on the BUR or on the white coating.  Also, there are no hail impact marks on the exposed surfaces of the modified bitumen rolled roofing materials, indicating there is no hail damage to those surfaces.  Damaged places on the coating are the result of mechanical impacts and other effects such as foot traffic on the roof.
>
> ***
>
> Water damage to the interior of the building is long term and ongoing and pre-dated the recent storm.  Water intrusion along the south exterior wall of the building is likely due to leakage from the gutter system over time during the life of the building, and not because of hail damage to the roof.

6.      On or about June, 2015, Plaintiff retained the services of Tom Irmiter to inspect the property for purposes of litigation.  Mr. Irmiter was asked to (1) determine whether or not

the property was damaged by the May 31, 2013 storm, (2) determine the extent of such damage, and (3) determine the scope of repair.  (*Deposition of Tom Irmiter*, Exhibit "4", p. 111, ll. 4-20).

7.     Mr. Irmiter first inspected the property on June 8, 2015, more than two years after the storm giving rise to this claim.  (Ex. "4", p. 111, ll. 16-20).

8.     Mr. Irmiter issued a report on September 23, 2015.  According to his report, the property suffered several intervening hail events between the time the claim was made and the time he inspected the property.  Two of these hail events involved hail of the same size or larger than the subject storm:  May 7, 2014 (more than a year prior to Irmiter's inspection) and May 26, 2015 (a few weeks before his inspection).  (*Storm Damage Report*, Exhibit "5", Section 1.2.)

9.     Mr. Irmiter admitted that intervening hail would normally cause problems dating damage.  (Exhibit "4", p. 117, l. 11 through p. 118, l. 13; p. 127, l. 20 through p. 128, l. 13).

10.     Mr. Irmiter relied upon the testimony of the property owner that the property did not start leaking until after the May, 2013 storm to date the observable hail damage to the 2013 storm.  (Ex. "4", p. 117, l. 11 through p. 118, l. 13; p. 126, ll. 8-13).

11.     In his report's conclusions, Mr. Irmiter consistently references the 2012 edition of the International Building Code as authoritative on the repair and replacement of identified damages.  (*Irmiter Report*, Ex. "5"; s*ee*, *e.g.*, 6.0 (4), (18), and (19)).

12.     The city of Oklahoma City has adopted the 2009 edition of the International

Building Code.  (*Oklahoma City Code of Ordinances*, § 12-16, Exhibit "6").

## III.     ARGUMENT AND AUTHORITIES

### A.     Daubert Standard

According to Rule of Evidence 702, the Court "must ensure that any and all scientific

testimony or evidence is not only relevant, but reliable."  *Bitler V. A.O. Smith Corp.*, 400

F.2d 1227, 1232 (10th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589).  This is a gatekeeper

function and applies to all expert testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

137, 147-49 (1999).  Rule 702 provides:

> A witness qualified as an expert by knowledge, skill, experience, training, or
> education may testify thereto in the form of an opinion or otherwise, if (a) the
> expert's scientific, technical or other specialized knowledge will help the trier
> of fact to understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is the product
> of reliable principles and methods; and (d) the expert has reliably applied the
> principles and methods to the facts of the case.

The court must determine whether the expert is proposing to testify to scientific or

other specialized knowledge which will assist the trier of fact in determining a fact in issue.

*Daubert*, 509 U.S. at 592.  Is the expert "qualified by knowledge, skill, experience, training,

or education to render an opinion."  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir.

2009) (en banc).  And is this qualification relevant to the facts at hand.  *Ralston v. Smith &*

*Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).  This inquiry requires a

determination of whether the expert's proferred testimony has "a reliable basis in the

knowledge and experience of his discipline."  *Bitler*, 400 F.3d at 1232-33 (quoting *Daubert*,

509 U.S. at 592).  In other words, is the expert's reasoning and methodology scientifically valid.  *Id.* at 1233.

   **B.**   **Mr. Irmiter's Causation Opinions are Unsupported by Scientific or Other Specialized Knowledge and Therefore Inadmissible**

Mr. Irmiter has been retained to express several opinions.  The first, and most important, is to make a causal connection between the damages he observed in June, 2015 and the May 31, 2013 storm.  Without this causal connection, his remaining opinions relating to the extent of damages and the scope of repair are immaterial.  Coverage under the policy only applies to covered causes of loss; here, storm damages from the May 31, 2013 storm.

As to this causal connection, Mr. Irmiter admitted he did not inspect the roof until June, 2015, more than two years after the date of loss.  His report acknowledges that four separate hail storms hit the property during that intervening timeframe, two of which involved hail stones of sizes equaling or exceeding the hail from the May 2013 storm.  In his deposition testimony, he even acknowledged that distinguishing historical hail strikes from different storms is nearly impossible.[1]  He has no apparent basis for assuming that the hail damage he observed in 2015 was from the 2013 storm, other than what he learned from the property owners about the relative timing of water leaks.

Mr. Irmiter's investigation and conclusions boil down to this.  He inspected a poorly maintained roof two years after the covered cause of loss occurred.  He employed a Tramex roof scanner and FLIR infrared camera to identify anomalies in the roofing materials

---

1 Mr. Irmiter did opine that one could make some general conclusions relating to hail strikes being more recent or older based on certain characteristics of weathering in the hail impact location itself.  (See, e.g., Ex. "4", p.

consistent with possible water accumulation.  He identified several areas which he believed were indicative of hail damage, though he could not independently identify when these damages occurred.  He then found **two** of these apparent "hail strikes" upslope from previously identified anomalies and made core-cuts into the roof covering downslope from these strikes.  These cores showed water in the roofing material.  Based on representations from the building owner that the building started leaking after the May, 2013 storm, Mr. Irmiter concluded that these "hail strikes" were the source of the water intrusion.  When specifically asked why the severe "alligator cracking" on the roof could not have been the basis for the water seen in the roofing material, Mr. Irmiter specifically stated it could not have been or else the whole roof would have been a catastrophic loss.  (Ex. "4", p. 173, l. 11 through p. 174, l. 7; p. 195, l. 11 through p. 196, l. 10).  Mr. Irmiter apparently concluded that since the whole roof was poorly maintained, it would be impossible for one area to leak without the whole roof leaking.

Mr. Irmiter's opinion relating to the condition of the roof being caused by the hail storm of May 31, 2013 should be excluded.  This fact pattern is substantially similar to a *Daubert* challenge recently addressed by Judge Heaton in *4100 Perimeter Ltd. Partnership v. Hartford Cas. Ins. Co.*, 2014 WL 10291171 (W.D.Okla.).  There, Judge Heaton noted:

> That is not true as to Mr. Young's second opinion – that the condition of the roof was caused by the hail storm on May 29, 2012.  He indicates he inspected the roof in June of 2014, more than two years later.  He has no apparent basis, other than what others have told him, for concluding (or assuming) that the condition of the roof as he found it in 2014 was due to a particular storm two years earlier.  Therefore, while his inspection of the roof might support an

---

146, l. 6 through p. 147, l. 11).

7

opinion that it reflected hail damage, he has no reliable basis for offering an opinion as to what storm caused it.  Any such conclusion in that regard will have to be established independently of Mr. Young.

Nor is this the first time Mr. Irmiter has relied on statements of others to establish causation.  Most recently, Mr. Irmiter was excluded from offering causation opinions in a windstorm case in Illinois.  *Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787 (N.D. Ill.) (copy attached as Exhibit "7").   In that case, Mr. Irmiter inspected a property four years after the date of loss and relied upon statements by the property owner's representative as to when the property began leaking.  Correlating his observations, weather information, and the statements of the owner, he was able to conclude a "reasonable date of loss" as occurring four years prior.

The Court excluded Mr. Irmiter from testifying for a variety of reasons, but focused on the information supporting his causation conclusions.  According to the Court, "[m]ore significantly, the report's causation conclusions are premised largely on information provided by Sawyer during the April 2015 site visit . . . [t]he report does not indicate that Irmiter, using his expertise in building forensics, identified these three categories of damage; rather, he took as a given Sawyer's representation of and distinctions between the damaged areas."  *Id.*, at *5.

The Court then excluded him from offering opinions on whether the March, 2011 windstorm caused the property damage he observed in 2015.  The Court discussed the many reasons why an expert cannot just relay another witness's likely testimony, chief among these being the danger of avoiding the reliability requirements of Rule 702 "through the simple

8

expedient of proffering an expert in lay witness clothing." *Id*. quoting *Von der Ruhr v. Immtech Int'l, Inc*., 570 F.3d 858, 864 (7th Cir. 2009).  According to the Seventh Circuit, "[t]he entirety of an expert's testimony cannot be the mere repetition of the out-of-court statements of others, and . . . an expert witness may not simply summarize the out-of-court statements of others as his testimony . . . An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *Id*., at *5 (quoting *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014).

In this case, Mr. Irmiter has done the exact same thing.  He has inspected a property two years after the date of loss.  Unable to attribute the hail damage he observed to the May 31, 2013 storm date due to intervening hail, he relies exclusively on the property owner's testimony that the roof began leaking after the 2013 storm to establish causation.  This is wholly unreliable and inadmissible under Rule 702.  Such testimony should be excluded.

### C.  Mr. Irmiter Has Applied the Wrong Building Code to this Loss and His Opinions Relying on Same are Unreliable.

Mr. Irmiter bases his conclusions relating to the scope of repair on requirements of various building codes.  Of specific importance to Mr. Irmiter, the 2012 version of the International Building Code mandates certain code upgrades upon the replacement of roofing material and upon disconnecting and re-connecting HVAC units.  Throughout his report, Mr. Irmiter references the 2012 IBC as authoritative.  However, at all times relevant to this case, the City of Oklahoma City had adopted the 2009 version of the IBC.  (SOF, ¶ 12).  Since Mr.

Irmiter is utilizing the wrong Building Code to measure his scope of repairs, his scope is necessarily unreliable under *Daubert* and Rule 702, and such opinions should be excluded.

## IV.    CONCLUSION

Plaintiff filed this claim nearly one year prior to retaining an expert witness to opine on the causation, nature and extent of damages.  Once an expert was retained to inspect the property two years after the subject storm, intervening hail strikes had obfuscated any damage that could be attributed to the May 31, 2013 storm.  Rather than make an objective determination of causation, Mr. Irmiter relied upon the testimony of lay witnesses as to the dates of interior water leaks to make his "expert" causation opinion.  This is an impermissible use of expert testimony as it merely cloaks lay hearsay testimony as that of an expert under Rule 702.  If Mr. Irmiter's causation opinion is excluded, as it should be, his remaining opinions are no longer probative of any issues remaining in this case.  For without a causation nexus, the scope and extent of repairs are immaterial.  But, even if this court were inclined to allow him to testify as to the extent of damages on the roof, he should be excluded from testifying as to the scope of repairs since he utilized the wrong building code in identifying this scope.

WHEREFORE, the Defendant, Travelers Casualty Insurance Company of America requests this Court exclude the testimony and opinions of Tom Irmiter together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

TAYLOR, FOSTER, MALLETT, DOWNS, RAMSEY
    & RUSSELL, A Professional Corporation


*/s/ Darrell W. Downs*

R. STRATTON TAYLOR, OBA #10142
staylor@soonerlaw.com
DARRELL W. DOWNS, OBA #12272
ddowns@soonerlaw.com
C. ERIC PFANSTIEL, OBA #16712
epfanstiel@soonerlaw.com
400 West Fourth Street
P.O. Box 309
Claremore, Oklahoma 74018
Telephone:   918/343-4100
Facsimile:    918/343-4900
*Attorneys for Defendant, Travelers Casualty*
*Insurance Company of America*

## <u>CERTIFICATE OF SERVICE</u>

⊠        I hereby certify that on the 3rd day of March, 2016, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Scott G. Hunziker
Email:  scott@vosslawfirm.com
The Voss Law Firm, P.C.
26619 Interstate 45 South
The Woodlands, TX  77380

        And

David Bernstein, OBA #010207
Email:  DBNormanOK@aol.com
Bernstein Law Firm
Bernstein Law Building
P.O. Box 1692
104 W. Gray Street
Norman, OK  73070
*Attorneys for Plaintiff*

                                        */s/ Darrell W. Downs*